UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DANIEL RICHARD MAHONEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 22-11074-FDS |
| ) | |
| **CARLOS DEL TORO, Secretary of** ) | |
| **the Navy,** ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON
PARTIES' MOTIONS FOR JUDGMENT ON THE PLEADINGS,
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

**SAYLOR, C.J.**

This is a case concerning a denial of a veteran's petition for a recharacterization of his discharge. Plaintiff Daniel Mahoney asserts that the Board for Correction of Naval Records ("BCNR") improperly denied his petition to upgrade his discharge characterization from "other than honorable" to "honorable" or (alternatively) "general under honorable conditions." He contends that the BCNR's decision should be reversed under the Administrative Procedure Act, 5 U.S.C. § 500 *et seq*. Defendant Carlos Del Toro, the Secretary of the Navy, contends that the BCNR's decision should be upheld.

Mahoney received a general discharge from the Navy in 1989 under "other than honorable conditions" for "misconduct due to drug abuse and [a] pattern of misconduct." Among other things, a urinalysis test detected marijuana in his system; he contended that he tested positive because another sailor "tossed" a joint into his alcoholic beverage, and that therefore his consumption of marijuana was not knowing.

Mahoney now contends that he was suffering at the time from post-traumatic stress disorder ("PTSD"), and that under current military policies, the BCNR should have granted his petition to upgrade the characterization of his discharge. The BCNR denied his petition, in substance, because he has not admitted that his marijuana use was knowing, and therefore wrongful; that his version of events is not credible; and that neither Mahoney himself nor any expert has attributed his marijuana use to PTSD.

This action, in substance, is an appeal from that decision. Mahoney has moved for judgment on the pleadings and for summary judgment. Del Toro has cross-moved for judgment on the pleadings.

Without question, the United States military is entitled to take substance abuse seriously. And it is likewise entitled to give substantial weight to issues such as candor, credibility, and acceptance of responsibility in its personnel decisions, including the determination of whether a characterization of a service discharge should be upgraded. Indeed, the guidance provided by the Department of Defense to the BCNR specifically provides that the Board may consider "[a]n applicant's candor" and his "[a]cceptance of responsibility, remorse, or atonement for misconduct" in deciding whether to grant relief. *See* Memorandum from Robert Wilkie, Under Sec'y of Def. for Personnel and Readiness (July 25, 2018).

Furthermore, it is not the role of this Court to simply second-guess the decisions of military boards of review. Its role is a limited one, confined to determining whether such a decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

Under the circumstances presented here, the Court cannot make the necessary findings to overturn the decision of the BCNR. Accordingly, and for the following reasons, plaintiff's motions for judgment on the pleadings and for summary judgment will be denied, and

defendant's motion for judgment on the pleadings will be granted.

**I.      Background**

     **A.      Factual Background**

The following facts, unless noted otherwise, are set forth as alleged in the complaint. The Court also takes notice of the administrative record before the BCNR, as a document whose authenticity is not in dispute. *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

Daniel Mahoney is a resident of Massachusetts. He served two tours of duty in the Navy between 1985 and 1989. (Admin. Rec. at 0076, 0084-85).

Carlos Del Toro is the Secretary of the Navy. (Compl. ¶ 4).

Mahoney first enlisted in the Navy on August 27, 1985. (Admin. Rec. at 0109). During his first enlistment, between February and August 1986, he was deployed on the USS Luce. (*Id.* at 0077). The USS Luce "escorted oil tankers throughout the Persian Gulf, and through the Suez Canal to the Mediterranean Sea" during the Iran-Iraq War. (*Id.*). "During this period, many commercial ships operating in the Gulf were hit by Iranian and Iraqi attacks." (*Id.*).

While serving on the USS Luce, Mahoney "witnessed a number of traumatic events." (*Id.*). He "observed an explosion on an oil tanker" and "witnessed crew members engulfed in flames jumping into sea while others were being burned to death." (*Id.*). He "smelled burning flesh." (*Id.*). He "felt intense fear, horror, and helplessness," and "wanted to do something to help those sailors, but [ ] could not." (*Id.* at 0077-78).

Mahoney rose in paygrade and rank. (*Id.* at 0078, 0163). He did not receive any non-judicial punishments ("NJPs"). (Compl. ¶ 15). He was awarded a commendation for his work on the USS Luce's pump in "hostile waters off the coast of Libya," and another for "outstanding performance" of "demanding duties with great dedication." (*Id.* ¶ 16; Admin. Rec. at 0169). He received three service ribbons. (Compl. ¶ 17; Admin. Rec. at 0088).

On August 24, 1988, Mahoney's first deployment ended, and he was honorably discharged. (Admin. Rec. at 0007). He reenlisted the next day. (*Id.*).

Mahoney's second deployment was difficult. According to the complaint, he "had extreme difficulty sleeping and felt like [he] was always under constant stress." (*Id.* at 0079). He "had overwhelming feelings of horror, anger, and guilt daily, and continued to relive [his] experience in the Persian Gulf." (*Id.*). He "discovered that alcohol helped stop some of these troubling thoughts and also helped [him] fall asleep." (*Id.*).

In December 1988, Mahoney received an NJP for "an unauthorized absence of 30 minutes." (*Id.* at 0080).

In January 1989, Mahoney was apprehended in Jacksonville, Florida, for a "DWI, speeding, and having the wrong tag on [his] vehicle." (*Id.*).

In February 1989, Mahoney received an NJP for drunkenness. (*Id.*).

In March 1989, Mahoney was evaluated for "drug/alcohol dependency." (*Id.*).

From about April 23, 1989, to June 2, 1989, Mahoney was treated at the Naval Hospital in Pensacola, Florida. (*Id.* at 0081). His treatment "emphasized abstinence" from alcohol. (*Id.*). He was not treated for his "stress disorder or the stress symptoms" that he was experiencing. (*Id.*).

In July 1989, Mahoney received an NJP for an unauthorized absence of "one hour and 53 minutes." (*Id.* ¶ 26).

In September 1989, Mahoney received a single NJP for "(1) an unauthorized absence lasting 11 hours and 30 minutes; (2) an unauthorized absence lasting 30 minutes; and (3) a single positive urinalysis for marijuana." (Compl. ¶ 29; Admin. Rec. at 0275). Mahoney asserts that he tested positive because another sailor "tossed" a joint into "the alcoholic beverage [he] was

4

drinking" the day before the urinalysis.  (Admin. Rec. at 0082).

In late September, Mahoney's commander informed him that he was being considered for separation.  (*Id.* at 0083).

On October 16, 1989, Mahoney declined further "drug/alcohol care."  (*Id.*).  He was then administratively separated and discharged under other than honorable conditions.  (*Id.* at 0275).

Mahoney's discharge paperwork notes that the basis for his discharge was "misconduct due to drug abuse and pattern of misconduct."  (*Id.* at 0275).  It listed four NJPs.  (*Id.* at 0275).

According to the complaint, immediately after his discharge, Mahoney was homeless for six months before moving back to Massachusetts.  (*Id.* at 0083-84).  Until 2006, he struggled to find "steady employment" and "struggle[d] with controlling [his] alcohol dependency."  (*Id.* at 0084).  He found himself "hitting rock bottom."  (*Id.*).

Mahoney began participating in "group meetings with other people who similarly had reached the lowest points of their lives and who were also trying to turn their lives around." (*Id.*).  He also began regularly attending Alcoholics Anonymous meetings.  (*Id.*).  He has been sober since December 2006.  (*Id.*).

Mahoney graduated from North Shore Community College in 2008 with an associate's degree in drug and alcohol rehabilitation.  (*Id.*).  He graduated from Salem State University in 2015 with a bachelor's degree in social work in 2015.   (*Id.*).

From 2016 to 2019, Mahoney was employed at the Essex Country Club in Manchester, Massachusetts, working as a member of the kitchen utility staff.  (*Id.* at 0085).  In 2019, however, he "was forced into early retirement due to the development of Superficial Siderosis, a serious brain hemorrhage, which has made him very ill."  (Compl. ¶ 55).

Since 2009, Mahoney has "actively volunteered for the North Shore Health Project," for

which he received a client appreciation award in 2017.  (Admin. Rec. at 0085).  He "participate[s] in lobbying activities on behalf of the Massachusetts Coalition to End Homelessness."  (*Id.*).  He also served as a board member for the Department of Mental Health Citizens Board in Lynn, Massachusetts.  (*Id.*).

Mahoney has been married since 2006.  (*Id.*).

### B.      Procedural Background

#### 1.      Plaintiff's Petition

On September 17, 2018, Mahoney submitted a petition to the BCNR requesting that his characterization of service be upgraded to "Honorable" or, in the alternative, "General Under Honorable Conditions."  (*Id.* at 0018).  He contended that an upgrade would be appropriate for three reasons.  First, he contended that his "PTSD should be considered a mitigating factor for the misconduct that [he] engaged in that ultimately led to [his] discharge under Other than Honorable circumstances."  (*Id.*).  He argued that two Department of Defense memoranda required "liberal and special" consideration of his PTSD as a mitigating factor.  (*Id.*).  Second, he contended that his "commendable overall in-service performance and model post-discharge behavior demonstrate equitable considerations that weigh in favor of an upgrade."  (*Id.*).  Third, he contended that "under current procedures [he] likely have been medically discharged."  (*Id.* at 0018-19).

Mahoney's petition included a report by Dr. Sandra A. Dixon, a licensed psychologist who examined him in April 2018.  (*See id.* at 0090).  Dr. Dixon concluded that after his initial service on the USS Luce, he met the diagnostic criteria for "Post Traumatic Stress Disorder, at a Several Level" and "Major Depressive Disorder, Recurrent, Severe."  (*Id.* at 0105).  She noted that his "conduct leading to discharge, substance abuse, can better be understood as a trauma response" that "directly impacted [his] ability to execute his military duties competently and

6

consistently." (*Id.* at 0106). She stated that it was her "professional medical opinion there is a clear nexus between his mental health disorders, specifically PTSD, and the conduct leading to discharge." (*Id.* at 0105-06).

### 2. The BCNR Opinion

On March 2, 2020, the BCNR denied Mahoney's petition in a written opinion. (*Id.* at 0001). The Board concluded that "[a]fter careful and conscientious consideration of the entire record, [it] found that the evidence submitted was insufficient to establish the existence of probable material error or injustice." (*Id.*).

The opinion began by noting that "[a]lthough the application was not filed in a timely manner, the Board found it in the interest of justice to waive the statute of limitations and consider [the] application on its merits." (*Id.*). The opinion then reviewed the circumstances of Mahoney's military service and his discharge. (*Id.* at 0001-02).

Because Mahoney's request for an upgrade to his characterization of service was based in part on the contention that he unknowingly suffered from PTSD at the time of the misconduct that ultimately led to his discharge, his request was "fully and carefully considered by the Board in light of" three potentially relevant memoranda that had been issued by the Department of Defense. (*Id.* at 0002 (citing Memorandum from Chuck Hagel, Sec'y of Def. (Sept. 3, 2014) (the "Hagel Memorandum"); Memorandum from A.M. Kurta, Acting Under Sec'y of Def. for Personnel and Readiness (Aug. 25, 2017) (the "Kurta Memorandum"); and Memorandum from Robert Wilkie, Under Sec'y of Def. for Personnel and Readiness (July 25, 2018) (the "Wilkie Memorandum"))). The specific guidance provided by those memoranda will be discussed in further detail below.

Next, the BCNR noted that it reviewed an advisory opinion ("AO") performed by a Navy mental-health professional in January 2019. (Admin. Rec. at 0002). The Board's opinion stated:

> The AO stated you have been diagnosed by a civilian psychologist with PTSD and major depressive disorder which can be attributed to your military service. Additionally, the AO noted that, while in-service, you were diagnosed with what would now be called alcohol use disorder and stated there is evidence you were experiencing emotional difficulties in addition to alcohol use symptoms. The AO further stated it is "reasonable to consider Petitioner's alcohol treatment was unsuccessful due to his concurrent mental health symptoms" and to "attribute his misconstrued misconduct following alcohol treatment to continued mental health symptoms."

(*Id.* at 0002).

The BCNR then noted that it had "carefully reviewed [Mahoney's] application, weighed all potentially mitigating factors, and considered [his] contention that PTSD should be considered a mitigating factor for the misconduct [he] engaged in that ultimately led to [his] OTH discharge." (*Id.*). Specifically, the Board stated that it had considered (1) "the diagnoses, comments, and opinion of [his] civilian mental health provider that there was a clear nexus between [his] mental health disorders and the conduct leading to [his] discharge" and that any treatment for alcohol abuse he had received at the time did "not seem adequate"; (2) "[his] commendable overall in-service performance and model post-discharge behavior," "numerous advocacy letters submitted on [his] behalf," and his "post-service achievements"; and (3) his contention that he would have likely been medically discharged under current Navy procedures. (*Id.* at 0002).

Finally, the BCNR—"noting the wrongful use of a controlled substance which spurred the initiation of administrative separation proceedings"—considered Mahoney's continued contention that he did "not knowingly consume marijuana" and that his positive drug test resulted from another sailor tossing a joint into his alcoholic beverage. (*Id.* at 0003). It further noted that his psychologist had opined that his undiagnosed PTSD had led to *alcohol* abuse and resulting misconduct, and that he himself likewise believed that his PTSD resulted in *alcohol* dependency. (*Id.* at 0003).

The BCNR then pointed out that Mahoney was discharged for "misconduct due to *drug* abuse and [a] pattern of misconduct as evidenced by four nonjudicial punishments." (emphasis in original). (*Id.*). It noted that *either* drug abuse *or* a pattern of misconduct supported a less-than-honorable discharge, adding: "However, you do not meaningfully address the alternative, 'drug abuse,' basis for your separation—other than contending that you did not knowingly use a controlled substance." (*Id.*).

The BCNR concluded:

> At no point do you admit to wrongful drug use [for the September 1989 urinalysis] or at any time during your military service. At no point do you contend that wrongful drug or marijuana use was a part of your means of self-medicating due to PTSD. At no point do you or any medical professional attribute your NJP for wrongful drug use to self-medication due to PTSD. Nor do you explain how a "marijuana joint" landing in your alcoholic beverage caused you to ingest marijuana — let alone in sufficient quantity to test positive for THC at the levels required under Navy mass spectrometry analysis. Rather, you simply contend, under oath, that your ingestion of this controlled substance was unknowing and by this method. However, you were found guilty at NJP in September 1989 by a preponderance of the evidence and, after three decades, the Board is not persuaded to disturb that finding.

(*Id.* at 0004).

The Board went on to state that "[a]ssuming, *arguendo*, that [Mahoney] had undiagnosed, in-service PTSD at the time of [his] misconduct, after a thorough consideration of [his] contentions and mitigating factors, the Board, applying liberal consideration, determined that [his] PTSD did not mitigate the drug-related misconduct which led to [his] discharge." (*Id.*). It further "noted that the command did not pursue administrative separation processing after [his] 13 July 1989 NJP, which by [his] statement was the result of [his] return to alcohol, but did pursue processing over two months later after [his] positive urinalysis and 29 September 1989 NJP for drug use." (*Id.*). And it determined that his explanation for the positive test was "neither plausible nor supported by [his] submission," and that his denial of knowingly using

9

marijuana meant that his "PTSD cannot be said to have mitigated [his] wrongful drug use on this occasion." (*Id.*). As a consequence, the BCNR did not "address the merits of [his] PTSD contentions or the alternate, pattern of misconduct, basis of [his] separation." (*Id.*).

> The Board determined that the explanation for testing positive for marijuana contained in your sworn personal statement was neither plausible nor supported by your submission. Moreover, you have consistently denied wrongful use of drugs in-service – let alone ever attributing it to another form of self-medication due to your undiagnosed, in-service PTSD. As such, your PTSD cannot be said to have mitigated your wrongful drug use on this occasion, or your separation based on misconduct due to that drug abuse. As this determination is dispositive of your petition, the Board need not address the merits of your PTSD contentions or the alternate, pattern of misconduct, basis of your separation.

(*Id.*).

Finally, the Board concluded:

> Accordingly, under the totality of the circumstances and for the foregoing reasons, the Board in its review discerned no probable material error or injustice that warrants changing your characterization of service.

(*Id.*).

### 3.     Proceedings in this Court

On July 5, 2022, Mahoney filed a complaint in this court requesting judicial review of the BCNR's decision. He contends that the BCNR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law. The complaint requests that the court enjoin the BCNR to correct his record to reflect a discharge characterization of honorable or general under honorable conditions, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2).

Mahoney has moved for judgment on the pleadings and for summary judgment. His motion requests that the Court set aside the BCNR's decision and remand the matter to the BCNR for reconsideration. Del Toro has cross-moved for judgment on the pleadings.

## II.     Legal Standard

A motion for judgment on the pleadings under Rule 12(c) differs from a motion to dismiss under Rule 12(b)(6) primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). It is, however, treated similarly. *See id.* at 54. To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). In addition to well-pleaded facts, a court may consider documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice. *Grajales v. Puerto Rico Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). A court may also consider documents whose authenticity is not disputed by the parties and documents central to the plaintiff's claim, even when those documents are incorporated into the movant's pleadings. *Curran*, 509 F.3d at 44.

A court may only enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres*, 445 F.3d at 54.

### III.    Analysis

#### A.    The Administrative Procedure Act

Plaintiff challenges the BCNR's evaluation of the administrative record. Federal courts may review the decisions of military boards of correction under the Administrative Procedure Act ("APA"). *Bolton v. Department of the Navy Bd. for Correction of Naval Recs.*, 914 F.3d 401, 406 (6th Cir. 2019); 5 U.S.C. § 701.

Judicial review under the APA is "narrow" because the court "affords great deference to agency decision-making." *International Jr. Coll. of Bus. & Tech., Inc. v. Duncan*, 802 F.3d 99, 106 (1st Cir. 2015) (quoting *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997)). An agency's decision is "presumed to be valid" if it is "supported by a rational basis." *Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd. of P.R.*, 665 F.3d 309, 319 (1st Cir. 2011). "Even if an inquiring court disagrees with the agency's conclusions, it 'cannot substitute its judgment for that of the agency.'" *Boston Redevelopment Auth. v. National Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (quoting *Associated Fisheries*, 127 F.3d at 109). A court may only "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion," or otherwise contrary to law. 5 U.S.C. § 706(2)(A)-(D); *Associated Fisheries*, 127 F.3d at 109.

In determining whether agency action is arbitrary and capricious under the APA, the court must examine the evidence relied on by the agency and the reasons given for its decision. The agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *see Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 351-52 (1st Cir. 2004). "An agency

action is arbitrary and capricious when the agency 'relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise.'" *Boston Redevelopment Auth.*, 838 F.3d at 47 (quoting *Associated Fisheries*, 127 F.3d at 109).

Remand to the agency is appropriate if "the record before the agency does not support the agency action, [or] if the agency has not considered all relevant factors." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

### B.     Statutory and Administrative Standards

The Secretary of the Navy, acting through the BCNR, may "may correct any military record of the [Navy] when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  The BCNR may review such requests from "former member[s] of the armed forces whose claim[s] under this section for review of a discharge or dismissal [are] based in whole or in part on matters relating to post-traumatic stress disorder." *Id.* § 1552(h)(1).  The BCNR must "review the claim with liberal consideration to the claimant that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal." *Id.* § 1552(h)(2)(B).

Both parties rely on three Department of Defense memoranda that provide guidance to the BCNR:  the Hagel Memorandum, the Kurta Memorandum, and the Wilkie Memorandum.

The Hagel Memorandum, which was promulgated on September 3, 2014, provides "supplemental policy guidance which details medical considerations, mitigating factors, and procedures for review." (Admin. Rec. at 0049).  It requires that "[l]iberal consideration [ ] be given in petitions for changes in characterization of service to Service treatment record entries

which document one or more symptoms which meet the diagnostic criteria of [PTSD]." (*Id.* at 0051). "Liberal consideration will be given to finding that PTSD existed at the time of service" or "at the time of discharge," where service records and diagnoses from "civilian providers" support that finding. (*Id.* at 0051). "In cases in which PTSD or PTSD-related conditions may be reasonably determined to have existed at the time of discharge, those conditions will be considered potential mitigating factors in the misconduct that caused the other than honorable conditions characterization of service." (*Id.* at 0051).

The Kurta Memorandum, which was promulgated on August 25, 2017, provides "clarifying guidance" to military review boards "regarding mental health conditions." (*Id.* at 0054). It requires that "liberal consideration" be given "to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD." (*Id.* at 0055). It notes that a "veteran's testimony alone . . . may establish the existence of a condition or experience that the condition or experience existed during or was aggravated by military service and that the condition or experience excuses or mitigates the discharge." (*Id.* at 0056). "Evidence of misconduct, including any misconduct underlying a veteran's discharge, may be evidence of a mental health condition, including PTSD." (*Id.* at 0055).

The Wilkie Memorandum, which was promulgated on July 25, 2018, "provides standards and principles" for military review boards "to guide [them] in application of their equitable relief authority." (Wilkie Mem. at 1). It notes that "[e]ach case will be assessed on its own merits," and that "[t]he relative weight of each principle[,] and whether the principle supports relief in a particular case, are within the sound discretion of each board." (*Id.*). The guidance applies to "any . . . corrections, including changes in a discharge, which may be warranted on equity or

14

relief from injustice grounds." (*Id.*).

Among other things, the Wilkie Memorandum provides the following:

In determining whether to grant relief on the basis of equity [or] an injustice . . . , [boards] shall consider the following:

. . .

g.  The relative severity of some misconduct can change over time, thereby changing the relative weight of the misconduct in the case of the mitigating evidence in a case. For example, marijuana use is still unlawful in the military, but it is now legal under state law in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago.

h.  Requests for relief based in whole or in part on a mental health condition, including post-traumatic stress disorder (PTSD) . . . , should be considered for relief on equitable [or] injustice, . . . grounds whenever there is insufficient evidence to warrant relief for an error or impropriety.

. . .

k.  Relief is generally more appropriate for nonviolent offenses than for violent offenses.

(*Id.* at 2).

The Wilkie Memorandum also provides that "[i]n determining whether to grant relief on the basis of equity [or] an injustice . . . [boards] should also consider the following as applicable:"

a.  An applicant's candor

b.  Whether the punishment, including any collateral consequences, was too harsh

c.  The aggravating and mitigating facts related to the record or punishment from which the veteran . . . wants relief

d.  Positive or negative post-conviction conduct, including any arrests, criminal charges, or any convictions since the incident at issue

e.  Severity of misconduct

f.  Length of time since misconduct

g.  Acceptance of responsibility, remorse, or atonement for misconduct

> . . .
>
> j.  Critical illness or old age
>
> k.  Meritorious service in government or other endeavors
>
> l.  Evidence of rehabilitation
>
> . . .
>
> n.  Job history
>
> o.  Whether misconduct may have been youthful indiscretion
>
> p.  Character references
>
> q.  Letters of recommendation
>
> . . .

(*Id.* at 3).

### C. Analysis

Plaintiff contends that the BCNR made three errors in reviewing his application. First, he contends that it did not account for his retroactive diagnosis of PTSD and changed social views on marijuana to mitigate his positive urinalysis. Second, he contends that it did not properly weigh the factors identified in the Wilkie Memorandum. Finally, he contends that "liberal consideration" required it to address whether his PTSD was a mitigating factor for the entirety of the conduct leading to his discharge.

Plaintiff first contends that the BCNR did not consider how his retroactive diagnosis of PTSD and changed social views on marijuana should mitigate his positive urinalysis. He contends that the medical opinions available to the BCNR state that all of his misconduct and substance abuse was attributable to PTSD.

That argument misreads both opinions. Dr. Dixon's opinion states that "there is a clear nexus between his mental health disorders, specifically PTSD, and the conduct leading to

discharge." (Admin. Rec. at 0106). However, her opinion clearly specifies that it uses "substance abuse" to mean "alcohol abuse." (*Id.* at 0104). It repeatedly notes that plaintiff's response to trauma was "abuse of alcohol." (*Id.* at 0106). The only mention of marijuana is in the opinion's summary of background information. (*Id.* at 0091 ("He was also randomly selected for a urinalysis test, and tested positive for marijuana.")). The Navy's expert opinion, which relies on plaintiff's service record, his affidavit, and Dr. Dixon's report, states that "[i]t is reasonable to attribute his continued misconduct following alcohol treatment to continued mental health symptoms." (*Id.* at 0013). Like Dr. Dixon's opinion, the Navy's expert opinion does not mention marijuana use, except for a single reference to his positive urinalysis. (*Id.* at 0012). The sum of the medical evidence in the record supports a retroactive diagnosis of PTSD, but the medical opinions, read in context, do not support the conclusion that his PTSD was the cause of his use of marijuana and his subsequent positive urinalysis.

Plaintiff further contends that changed social views on marijuana use should be considered a mitigating factor. The Kurta Memorandum provides that

> [t]he relative severity of some misconduct can change over time, thereby changing the relative weight of the misconduct to the mitigating evidence in a case. For example, marijuana use is still unlawful in the military but it is now legal in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago.

(*Id.* at 0058). However, whatever the contemporary view of marijuana use, plaintiff has never acknowledged that his positive urinalysis was due to intentional ingestion of marijuana. In his reply memorandum, he contends—apparently for the first time—that the positive result could have been attributable to a "marijuana tea" or a "false positive." (*See* Pl.'s Reply at 4). But those arguments were not presented to the BCNR, and in any event they are not supported by the

citations in plaintiff's briefing.[1] Furthermore, the Court cannot credit the argument that intentional marijuana use should be treated less severely when plaintiff has repeatedly said that he did not knowingly consume marijuana.

Second, plaintiff contends that the BCNR did not properly weigh the factors set forth in the Wilkie Memorandum. Some of those factors, certainly, appear to weigh in his favor. His NJPs were based on "nonviolent offenses." (Wilkie Mem. at 2). His request for relief is based in part on PTSD. (*Id.* at 2). It has been more than thirty years since his discharge. (*Id.* at 3 (listing "[l]ength of time since misconduct" as an equitable factor)). He suffers from hearing loss that "affects [his] balance," making it difficult for him to walk "without the use of a cane." (Admin. Rec. at 0085). And he has suffered from a "serious brain hemorrhage," and his discharge characterization "reduces his eligibility for benefits and support services administered by the U.S. Department of Veterans Affairs." (Compl. ¶¶ 55, 50); (*see* Wilkie Mem. at 3 (listing "[c]ritical illness" as an equitable factor).[2]

Plaintiff's post-discharge conduct appears to have been relatively exceptional: he overcame homelessness, became sober, found steady employment, obtained a college degree, volunteered in his community, and has been married for more than fifteen years. (*See* Wilkie Mem. at 3 (listing "positive or negative post-conviction conduct," "character and reputation," "evidence of rehabilitation," and "job history" as equitable factors)). And the administrative record contains a number of very positive character references. (Admin. Rec. at 0193-99).

The BCNR's decision was based in substantial part on plaintiff's apparent lack of candor

---

[1] *See* Pl.'s Reply at 4 n.1 (discussing the potency of marijuana tea without explaining how a joint thrown into a beverage could create such a tea); *id* at 4 n.2 (noting that "various medications" can result in a positive marijuana test without citing any such medications that plaintiff was taking).

[2] Plaintiff's brain hemorrhage was not described in his petition to the BCNR.

and failure to accept responsibility. It specifically noted that plaintiff still has not admitted that he intentionally ingested marijuana; it essentially concluded that his explanation was not credible, was rejected at the time of his discharge, and that it was "not persuaded to disturb that finding." (Admin. Rec. at 0004). Furthermore, it noted that neither plaintiff nor any medical professional had attributed his marijuana use to PTSD.[3]

The BCNR's decision states that it "weighed all potentially mitigating factors," including the opinion of his mental-health provider, his "commendable overall in-service performance and model post-discharge behavior," and his contention that he likely would have been medically discharged under current Navy procedures. (*Id.* at 0002-03). Plaintiff contends that the Board should have given more liberal consideration of those mitigating factors, and provided a more detailed explanation as to why those factors were not sufficient to recharacterize his discharge.

The Board made clear that it would not reconsider the issue of drug abuse in light of (what it perceived to be) plaintiff's lack of candor and credibility and his failure to accept responsibility. Without question, that is a decision it was empowered to make. And it was entitled to make that decision notwithstanding the presence of countervailing mitigating factors; the requirement that it give "liberal consideration" to mental-health issues, including PTSD, does not require that it give controlling weight to those issues. Furthermore, and as noted, the Board

---

[3] As noted, the BCNR's decision reads:

> Assuming, *arguendo*, that you had undiagnosed, in-service PTSD at the time of your misconduct, after thorough consideration of your contentions and mitigating factors, the Board, applying liberal consideration, determined that your PTSD did not mitigate the drug-related misconduct which led to your discharge. The Board noted that the command did not pursue administrative separation processing after your 13 July 1989 NJP, which by your statement was the result of your return to alcohol, but did pursue processing over two months later after your positive urinalysis and 29 September 1986 NJP for drug use.

(Admin. Rec. at 0004).

expressly noted that plaintiff himself did not contend that his drug use was caused by PTSD; instead, he denied any intentional drug use.

Finally, the level of explanatory detail in the opinion is sufficient under the circumstances to withstand review under the APA. It is true that the APA requires administrative agencies to justify their decisions; a decision made "without explanation" may be arbitrary and capricious. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1912 (2020). But the opinion here contains more than sufficient information from which the Court can "conclude that [the Board's decision] was the product of reasoned decisionmaking." *State Farm*, 463 U.S. at 52. The Board was not required to explain its conclusions in any greater detail—particularly when the basis of its decision, on a relatively narrow ground, was quite clear.

Again, plaintiff's discharge was "due to drug abuse and pattern of misconduct." (Admin. Rec. 0275). As the opinion expressly states, the drug-abuse finding was a sufficient basis for the discharge. Having determined that that finding would not be reconsidered, the Board was not required to address the other reasons supporting the "other than honorable" discharge.

In summary, under the circumstances, the decision of the BCNR to deny relief was not arbitrary or capricious, an abuse of discretion, or contrary to law.

## IV.     Conclusion

For the foregoing reasons, plaintiff's motions for judgment on the pleadings and for summary judgment are DENIED. Defendant's cross-motion for judgment on the pleadings is GRANTED.

**So Ordered.**

Dated: May 22, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court